PARIENTE, J.,
concurring.
I concur in the affirmance of the defendant’s conviction- and death sentence. The defendant entered a plea of guilty for the tragic murder of two victims and the attempted murder of a third victim — all of whom he shot at close range. The grim sequence of the robbery and ensuing murders was documented by the convenience store’s security camera. The defendant, who was twenty-four years old at the time of the murders, waived a penalty phase before a jury. I agree that the defendant knowingly, voluntarily, and intelligently waived his right to a jury trial, -and that therefore the defendant “cannot avail himself to relief pursuant to Hurst.” Majority op. at 38.
1 write only to highlight, as demonstrated "through the trial court’s excellent sentencing. order, the sentencing judge’s profound understanding of how Mullens’s dysfunctional upbringing influenced the person he became as an adult:
However, while the Court firmly believes that the Defendant was well aware of the criminality of his actions, competent evidence was' presented that suggests that the Defendant’s ability to conform his conduct to the requirements of law was substahtially impaired. In addition to Dr. Machlus’s testimony regarding the Defendant’s mental health, the Court also heard testimony from several of- the Defendant’s family members regarding his upbringing. The totality of their testimonies painted a very bleak picture of the Defendant’s childhood and background.
The Defendant’s father was incarcerated in prison for the majority of the Defendant’s- life. However, during the periods of his release, his father admitted to brutally beating the Defendant’s mother in front of the Defendant and his siblings, and to also viciously beating the *41 children themselves. Like his father, the Defendant’s brother also took to inflicting violence on the Defendant, horribly beating him on several occasions. In addition to these beatings, the Defendant’s father was constantly seeking out narcotics and abusing them in front , of the Defendant. His father would often steal household funds as well as others’ property to pay for drugs and alcohol. The Defendant was no, older than five when his father taught him how to shoplift in order to supply the family with food and other items they needed. Similarly, the Defendant’s mother was an alcoholic who abused both alcohol and marijuana in the presence of the Defendant. His parents’ addictions led to a lack of residential stability' and' inadequate resources to supply food, clothes or utilities, forcing the Defendant and his siblings to go without these items..
The testimony from the Defendant’s family members made' clear that throughout his formative years, the Defendant was exposed to severe physical and emotional abuse, rampant alcohol and drug abuse and lessons on how to commit crimes. Compounding the effects of the Defendant’s childhood is the lack of any “protective factors.” Dr. Machlus testified that the Defendant did not have any of the protective factors that would typically insulate an individual from experiencing the negative consequences of such an upbringing.
Additionally, when the Defendant was sixteen years old he was sentenced to prison. The Defendant’s mother testified that when he returned from prison, the Defendant was “very different,” .and that he had'become “angry” and “paranoid.” She testified that his behavior worsened to the point that their neighbors were concerned enough to start a petition to have Defendant removed from the neighborhood. Having tried to convince the Defendant to seek professional help and failing, even the Defendant’s mother thought -his condition had become so irrevocable that she believed he would have been better off dead.
■ Furthermore, both Dr. Machlus and the Defendant’s mother testified as to the Defendant’s predisposition to psychological disorders and substance abuse. It was well established that the Defendant’s lineage is saturated with individuals who suffered .■ not only from psychological disorders, but also severely abused drugs and alcohol. As previously noted, Dr. Machlus testified that individuals who suffer from both Bipolar Disorder and substance abuse are six times more likely to commit violent .criminal acts as opposed to those individuals who suffer solely from Bipolar Disorder. Given the Defendant’s mental health and substance abuse history, family upbringing and lack of protective factors, it is evident that the Defendant lacks the ability to conform his conduct to the requirements of law.
While the Court has no doubt that the Defendant was well aware of the criminality of his actions, it is the combination of the Defendant’s mental health and substance abuse issues along with his upbringing that indicate the Defendant lacked the capacity to conform to the requirements of law. In light of the foregoing, the Court finds that this factor has been proven and accords it moderate weight.
As long as we continue to have a death penalty in Florida, we will see that many of the defendants who sit on death row have backgrounds similar to the history ■and life of Khadafy Kareem Mullens. While Mullens’s multiple, traumas, including his numerous adverse childhood experiences, serve as substantial non-statutory mitigation, T cannot disagree with the trial *42 court’s weighing of the aggravating circumstances against the mitigating circumstances, nor with our conclusion that the death sentence in this case was proportional, and agree that this case is dramatically different from Yacob v. State, 136 So.3d 539, 550-52 (Fla.2014), a case we reduced to life. Accordingly, I concur in the affir-mance of Mullens’s conviction and death sentence.